### THE NUGENT. THE S. W. GEE. THE TRENTON.

(Circuit Court of Appeals, Second Circuit. December 5, 1905.)

No. 5.

COLLISION—TUG MEETING TOW—MUTUAL FAULT OF TUGS.

The tugs Trenton and Gee both *held* in fault for a collision between the Gee and a canal boat in tow of the Trenton when meeting in the night in the Buffalo ship canal: The Gee because she did not keep a proper lookout and in consequence failed to observe the towing lights on the Trenton and to govern her movements accordingly, and the Trenton for keeping to the left side of the canal in violation of the rules and without giving any signal to warn the Gee of her intention. The canal boat *held* not in fault, although she did not carry the regulation lights; notice of her presence being given by the towing lights of the Trenton.

Appeal from the District Court of the United States for the Western District of New York.

This cause comes here upon appeal from a decree of the District Court, Western District of New York, holding the steam tug S. W. Gee solely in fault for a collision with the canal boat William Nugent in tow of the tugboat Trenton.

Harvey L. Brown, for appellant.

John W. Ingraham, for the Trenton.

Wm. B. Wright, Jr., for the Nugent.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The collision occurred in the City Ship Canal (known also as the "Blackwell Canal") in Buffalo, a little below the drawbridge which crosses the canal at Michigan street. The canal is 197 feet wide. The canal boat William Nugent left her berth above the bridge in tow of the tug Trenton, bound for Peck slip, which enters the canal at right angles about 1,100 feet beyond the bridge, and through said slip, into the Buffalo river. For convenience of description, the ship canal may be considered as running about north and south. Its real course is about northeasterly and southwesterly. The drawbridge turns on a central pier, which leaves an easterly and westerly passage. At the time of the accident a coal scow 30 feet wide and 130 feet long was tied up to the westerly bank of the canal immediately beyond the bridge abutment. The Trenton with her tow proceeded along the westerly (left-hand) side of the canal and when about 300 feet above the bridge perceived the lights of a tug (the Babcock) some 500 feet below the bridge coming up, and apparently making for the westerly passage. For some reason the Trenton wished to keep to the left-hand side of the canal and to that end blew a two-blast signal to the Babcock. The latter promptly answered with a like signal and changed her course so as to go through the easterly passage, passing starboard to starboard. As the Trenton was just entering the draw, she observed the red and white lights of the Gee coming around the corner of Peck slip, and her green light as she got straightened up in the canal. The Gee was bound up above the bridge to take up a tow in conjunction with the Babcock; just before she turned in out of Peck slip she blew a bend signal whistle and as she got into the canal three whistles for the drawbridge. When she turned into the canal, the Gee saw the lights of the Trenton coming through the bridge. She (the Gee) bore over to the starboard, to the west side of the canal, thus keeping to the right and when about halfway between Peck slip and the bridge blew one whistle to indicate that she wanted the starboard side of the canal and expected to pass the Trenton, port to port. None of the whistles of the Gee were heard on the Trenton; and (after her exchange with the Babcock) the latter sounded none, although she continued on the westerly side of the canal, clearing the coal scow by about 10 feet, the Nugent on a short tow-line following 5 or 6 feet behind her. The Gee, after straightening up in the canal, kept over to the westward as her signal indicated she intended to, crossed the bow of the Trenton, and got into the water between the latter and the west bank. There was room for her there, because by this time the Trenton had got some little way beyond the coal scow,

the bow of the Nugent (which boat was 96 feet long) being about half the Nugent's length past the bow of the scow. The Gee did not perceive the canal boat until she was in the pocket formed by the Trenton and Nugent to the east, the bank to the west, and the coal scow to the south. It was while she was there maneuvering that the collision happened.

Various charges of fault are made which need not all be discussed. It is charged that the Nugent did not exhibit the regulation lights and it is conceded that the charge is true. This is a fault and the canal boat would be required to bear her own proportion of the loss, were it not for the circumstance that we are satisfied that her failure to display proper lights did not contribute to the catastrophe. Her lights had she carried them would have given notice to the Gee of the fact that the Trenton had a tow, and it was the Gee's failure to recognize that fact which helped to precipitate the catastrophe. But, as will be seen, we have reached the conclusion that the Trenton, nearer to the Gee than the Nugent was, had already given the same notice. If those on the Gee failed to observe the Trenton's towing light we cannot assume that they would have been any more attentive to lights on the Nugent.

The rule (rule 9 of Pilot Rules for the Great Lakes) required the Trenton at the time to carry "on top of the pilot house a white light * * * and an additional white light hung not less than three feet vertically above the * * * headlight." There is a sharp conflict of testimony on this branch of the case. The captain of the Gee testifies that he saw but one white light, and the captain of the Babcock corroborates him, but four witnesses testify that both lights were burning. Manifestly the district judge, who heard the witnesses, was satisfied that the two white lights were shown or he would not have held the Trenton free from fault. With such a preponderance of testimony in its support we cannot disturb such finding. The Gee therefore is chargeable with knowledge of the fact that the Trenton had a tow, because the Trenton's lights gave her notice of that fact, and her navigation is to be tested in accordance therewith; if failure to keep a sufficient lookout left her without such necessary information such failure is itself a fault. The captain of the Gee says that if he had known the Trenton had a tow he might have gone to the easterly draw; whether or not he did that, he could easily have avoided collision if he had known the tow was there. All he had to do was to move into the water to the port side of the Trenton at such speed as to admit of his holding himself in the pocket until the Nugent had been hauled forward far enough to enable the Gee to slip between her and the coal scow. We find no fault with the Gee for keeping to the starboard side of the canal, even if she knew the Trenton had a tow; it was her rightful place, and in the absence of any signal from the Trenton she had the right to assume that after emerging from the draw the Trenton also would haul over to her proper place. We find the Gee in fault, not for crossing the Trenton's bows—there was sufficient clearance left—nor in going into the water west of the Trenton; but in so executing such maneuver as to continue on and into the canal boat of whose presence she was ignorant because she did not keep a proper lookout.

145 F.—3

We also find the Trenton in fault for keeping to the westerly or left-hand side of the canal after passing the draw without signifying by appropriate signal her wish or intention to navigate contrary to the rule which required her to keep to the right. Some testimony was introduced to show that it was the custom for boats coming down the Ship Canal bound into Peck slip to take the westerly side of the draw and keep to the westerly side of the canal on account of making the turn into the slip. But the evidence failed to show more than that a large majority did so navigate, while the witness himself admitted that the custom was in conflict with the rule to keep to the right and that vessels bound up the canal could not tell in advance that vessels coming down were going to keep to the left, instead of to the right unless such vessels indicated their intention by proper signal. The failure of the Trenton to give such a signal was a fault and we cannot say that had she sounded two whistles as she came out of the westerly passage, the Gee would not have laid her course for the easterly passage and so avoided the collision.

The decree is reversed, with costs of this court to the Nugent against the Gee, and to the Gee against the Trenton, and cause remanded to the District Court, with instructions to decree in favor of the Nugent and against both the Gee and the Trenton for damages, interest, and costs—one-half against each.